**Robert CHOATE, Appellant,**

v.

**ATHENS MANUFACTURING CORPO-
RATION and Insurance Company of
North America, Inc., Appellees.**

Supreme Court of Tennessee,
at Knoxville.

Aug. 27, 1984.

Conrad Finnell, Cleveland, for appellant.

Kenneth D. Higgins, Higgins, Biddle &
Chester, Athens, for appellees.

OPINION

FONES, Justice.

The issue in this worker's compensation
appeal is whether an injury incurred in an
automobile accident is compensable as aris-
ing out of and in the course of plaintiff-em-
ployee's employment.

Plaintiff, Robert Choate, at the time of
his accident and injury was the production
manager for Athens Manufacturing Corpo-
ration. According to plaintiff's testimony,
on Friday, June 12, 1981, John Wesley Car-
ter, the plant manager of Athens Manufac-
turing Corporation requested that plaintiff
accompany him to repair the company's
houseboat that weekend. He instructed
plaintiff to make arrangements for a me-
chanic to meet them the following morning
at B & B Marina to work on said boat.
Plaintiff and Carter left the plant that Fri-
day afternoon and proceeded together in
Carter's wife's automobile to where the
houseboat had been docked. During the
journey, the pair stopped in Chattanooga to
purchase a supply of whiskey which would
last them for several weeks. Apparently,
both plaintiff and Carter spent Friday eve-
ning in a trailer on the bank of the river
near the houseboat.

The next morning, plaintiff returned to
the plant in Athens to supervise some em-
ployees who had come in to work overtime.
The parties had planned to remove the
houseboat from its docking place and
cruise up river to the B & B Marina to
meet the waiting mechanic. About noon,
plaintiff returned to the boatdock to begin
the trip to the marina. It appears that
when plaintiff returned to the boatdock,
three other persons had joined Carter and
were going to accompany them on the river
trip to the B & B Marina. At about the
half-way point in the voyage, the repair
plans were aborted, the houseboat was
turned around, and it arrived back at the
boatdock "close to dark." Plaintiff testi-

fied that he drank approximately eight beers that afternoon.

Upon arrival back at the boat dock, plaintiff received a telephone call from his son who asked him to return home that night. Plaintiff decided to go home but told Carter that he would return the next morning to pick him up. On his way home, at about nine-thirty to ten p.m., plaintiff collided with the rear of another vehicle injuring his left shoulder. No police charges were lodged against plaintiff.

The chancellor, at the close of plaintiff's proof, which consisted to two medical depositions, portions of prior depositions of both plaintiff and Carter and plaintiff's trial testimony, sustained defendant's motion to dismiss finding plaintiff's accident did not arise out of or in the course of his employment with defendant. We affirm.

Plaintiff attempts to bring the facts and circumstances of this case under the rationale of *Eslinger v. F & B Frontier Construction Co.*, 618 S.W.2d 742 (Tenn.1981). In *Eslinger* a pick-up truck was provided to the employee. The company paid for its operation including going to and from the employee's home to various work locations. After having worked on a construction site from approximately 6:00 a.m. to midnight one evening, the employee on his way home apparently fell asleep and struck a utility pole with his truck, killing him. In affirming the chancellor's finding that the accident was compensable this Court held:

> The primary reason the accident arose out of and in the course and scope of the employment was that the company provided him a business use vehicle that he was authorized and expected to use in going to and from work sites to his home. It is well settled law in this State that where transportation is furnished by an employer as an incident of the employment, an injury suffered by the employee while going to or returning from his work in the vehicle furnished arises out of and is within the course of the employment. [citations omitted.] *Id.* at 744.

Professor Larson, in his treatise on workmen's compensation law, succinctly articulates the rationale supporting this rule:

> The justification for this holding is that the employer has himself expanded the range of the employment and the attendant risks. He has, in a sense, sent the employee home on a small ambulatory portion of the premises, just as the sailor on a British ship is conceived to be on a little floating fragment of Britain herself. 1 Larson, *The Law of Workmen's Compensation* § 17.10 (1982).

■ In the case at bar, plaintiff was provided with a company car which he could "drive anywhere." However, on the weekend he was injured, instead of taking this vehicle, plaintiff and Carter elected to drive Carter's wife's car and left plaintiff's company car parked at the plant. Plaintiff argues that Carter's wife's car was a "substitute" vehicle for Carter's own company car and therefore when plaintiff had his accident, while not driving his own company car, he was driving a company car nonetheless. This argument is meritless.

First of all, plaintiff elected to forego the privilege his company had provided him when he left his own company car at the plant in favor of his superior's wife's car. Secondly, there is no evidence in the record to support the contention that Carter's wife's car could be a "substitute" company car. At trial, a portion of Carter's deposition was read into the record as follows:

Q What was the reason, if there was one, why the company car was not taken on this occasion, as distinguished from your personal car?

A My wife had the company car.

Q This was a substitute for the company car that Robert [plaintiff] was driving at the time of the accident?

A Well, you could say that.

It is clear that the only reason plaintiff was driving Carter's wife's car was that Carter's wife had the company car. Plaintiff has not cited any authority for this "substitute vehicle" theory. Without any evidence in the record that Carter's wife's

car was a company vehicle, and finding no legal authority that it could be considered a "substitute" company vehicle, we hold that plaintiff was not in a company car when he had his accident. Hence, the *Eslinger* rationale is inapposite under these circumstances.

■ Plaintiff's fall-back position that his employment created the necessity for his travel at the time of his accident is also untenable. It is undisputed that plaintiff left the trailer on Saturday evening for the admitted purpose of getting home to be with his son. There was no business motivation behind that trip home. In fact, plaintiff was going to have to return the next day to pick up Carter. The accident occurred while plaintiff was on a purely personal mission. Neither *Eslinger* nor any of our cases have allowed recovery when the employee was driving a company car on a weekend frolicsome trip unassociated with the scope of the employment or the company's interest in the employees going to and from work. Thus we think that under these circumstances the general rule that accidents during travel to and from work are not compensable is applicable. *Sharp v. Northwestern National Insurance Co.*, 654 S.W.2d 391 (Tenn.1983); *Smith v. Royal Globe Insurance Co., Inc.*, 551 S.W.2d 679 (Tenn.1977).

Accordingly, the judgment of the Chancery Court of McMinn County is affirmed. Defendant has moved, pursuant to T.C.A. § 27–1–122, for damages for frivolous appeal. That motion is denied. Costs of this appeal are assessed against plaintiff.

COOPER, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.